UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

THEODORE ROBERT,

    Plaintiff,

v.

CITY OF SOUTH BEND, INDIANA,

    Defendant.

CAUSE NO.: 2:13-CV-274-TLS

**OPINION AND ORDER**

The Plaintiff, Theodore Robert, is a former police officer with the South Bend Police Department (SBPD). On March 25, 2016, the Plaintiff filed a Third Amended Complaint [ECF No. 51] against the City of South Bend, alleging that he was denied a promotion for a School Resource Officer position posted in November 2011 because he is African American, in violation of Title VII and the Equal Protection Clause to the United States Constitution. This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 93], filed on January 4, 2019. For the reasons stated below, the Defendant's Motion for Summary Judgment is GRANTED.

**LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-

moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). "To survive summary judgment, the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in [his] favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017). However, the nonmoving party "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citing *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014)). Likewise, irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## STATEMENT OF MATERIAL FACTS

The Plaintiff, an African American male, has an undergraduate degree from Hope College, has a master's degree in public affairs from Indiana University, and is a graduate of the Kalamazoo Valley Law Enforcement Academy. Decl. of Theodore Robert, ¶¶ 1–2, ECF No. 106. In 2004, the Plaintiff began his career in law enforcement by joining the Benton Harbor Police Department as a patrol officer. *Id.* ¶ 2. Throughout his tenure as a police officer, the Plaintiff volunteered at various civic organizations such as the Boys and Girls Club of America. *Id.* ¶ 46.

While at the Benton Harbor Police Department, the Plaintiff received certification through the Michigan State Police D.A.R.E./T.E.A.M. division as a School Resource Officer

(SRO) and became an SRO. *Id.* ¶ 3. An SRO is a police officer who assists with school security, mentors students, and teaches students about criminal justice issues. Decl. of Crittendon, ¶¶ 7–8, ECF No. 94-3. The Plaintiff remained an SRO until he resigned from the Benton Harbor Police Department in 2006. Decl. of Theodore Robert, ¶ 3.

In November 2006, the Plaintiff joined the SBPD as a police officer. *Id.* ¶ 1. On July 6, 2010, the Board of Public Safety, which is an administrative agency responsible for disciplining SBPD police officers, reprimanded the Plaintiff and suspended him for thirty days without pay. Dep. Exs., pp. 22–23, ECF No. 94-2. The Board found that, on May 30, 2010, the Plaintiff used excessive force when he "threw a single punch to [a] handcuffed subject's face which caused a laceration to the subject's eye." *Id.*

In November 2011, the Plaintiff applied for an SRO position with the SBPD. Decl. of Crittendon, ¶ 6, ECF No. 94-3. Officer Antonio Pacheco, who is Latino, also submitted an application. *Id.* ¶ 15. A white police officer and an African American police officer also applied for the position. *Id.* Interviews for the SRO position were conducted in December 2011 by Lieutenant Eric Crittendon, Captain Young, and Division Chief Steve Richmond. *Id.* ¶ 16. Crittendon, who is African American, was the supervisor of the SRO program and the lead person on the interview panel. *Id.* ¶¶ 2, 12. Captain Young and Division Chief Richmond, who are white, assisted with the selection process. *Id.* ¶ 12. Ultimately, Officer Pacheco was selected for the vacant SRO position. *Id.* ¶ 18.

Regarding the selection of Officer Pacheco, Lieutenant Crittendon stated in his written declaration that Officer Pacheco "had experience in schools as a special education teacher and coach" and "spoke some Spanish—a significant advantage given the need to serve the . . . Latino

3

student population." *Id.* ¶ 19. Lieutenant Crittendon also stated that Officer Pacheco "displayed a positive, kind manner that . . . would resonate well with school-aged children." *Id.*

Lieutenant Crittendon stated that he "was generally aware that [the Plaintiff] had served a suspension the year before (*i.e.*, 2010) for punching a handcuffed suspect at the county jail." *Id.* ¶ 21. Lieutenant Crittendon noted that it was "critically important that SBPD not have heavy-handed officers in schools." *Id.* Lieutenant Crittendon considered "how it would look if I put an officer in schools who had a history of punching a suspect. If something happened, how could I—or the City—explain that? This information suggested to me that [the Plaintiff] was not the best applicant for the job." *Id.*

Ultimately, Lieutenant Crittendon concluded that Officer Pacheco "was the best qualified candidate for the November 2011 SRO vacancy. My recommendation was based on his application, experience, temperament, language skills, and interview performance." *Id.* ¶ 24. He further stated: "[My] colleagues on the panel agreed with my conclusions and recommendation. I communicated the recommendation to Chief Boykins, who approved it." *Id.* ¶¶ 24, 25. Darryl Boykins, who at time was the SBPD Chief of Police, stated that he approved the panel's recommendation without any independent review of the applications and appointed Officer Pacheco to the SRO position. Decl. of Darryl Boykins, ¶ 9, ECF No. 94-4. Chief Boykins is African American. *Id.* ¶ 2.

On October 19, 2015, the Plaintiff resigned from the SBPD. *See* Pl.'s Resp. Br. in Opp'n to Def.'s Am. Br. for Summ. J., p. 1, ECF No. 104. On February 8, 2016, the Plaintiff pleaded guilty to a criminal charge of excessive use of force which arose from punching a handcuffed suspect in the face in 2010. Dep. Exs., pp. 24–26, ECF No. 94-2.

4

ANALYSIS

The Plaintiff alleges he was not selected for promotion to the position of Student Resource Officer with the SBPD in November 2011 because he is African American, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Title VII) and the Equal Protection Clause of the United States Constitution. Pursuant to Title VII, it is unlawful for an employer to "discriminate against any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1); *see also de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019). "Similarly, the Equal Protection Clause protects against intentional discrimination on the basis of race . . . , and 42 U.S.C. § 1983 provides an employee subjected to such discrimination a path to relief." *de Lima Silva*, 917 F.3d at 559. The Defendant argues it is entitled to summary judgment because the SBPD promoted a better qualified candidate to the position of Student Resource Officer and the Plaintiff has not offered any evidence that the explanation for promoting the other candidate was a pretext for race discrimination. The Court agrees with the Defendant's latter argument.

Discrimination claims brought under both Title VII and § 1983 are evaluated using the same standard. *de Lima Silva*, 917 F.3d at 559 (citing *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 n.7 (7th Cir. 2010)). The Seventh Circuit has recently clarified that "*all* discrimination cases present the same basic inquiry: At the summary-judgment stage, the proper question is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)) (emphasis and alterations in original). Due to the nature of this case, the Court will

evaluate the Plaintiff's claims under the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Ferrill*, 860 F.3d at 499–500 (noting that this framework is a formal method of analyzing discrimination cases based upon an argument that similarly situated employees not in the plaintiff's protected class were treated better).

The Plaintiff carries the initial burden of establishing a prima facie case for failure to promote based on discrimination, which can be accomplished by setting forth evidence that (1) he is a member of a protected class, (2) he was qualified for the position sought, (3) he was rejected for the position, and (4) the employer promoted someone outside of the protected class who was not better qualified for the position. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016) (citing *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016)). If established, "this prima facie case creates a presumption of discrimination, and the 'burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its employment decision." *McKinney v. Office of Sheriff of Whitley Cnty.*, 866 F.3d 803, 807 (7th Cir. 2017) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802–04). "If the employer does this, then the burden shifts back to the plaintiff to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination." *Ferrill*, 860 F.3d at 500. "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015).

To establish pretext, the plaintiff must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the defendant's proffered reasons that a reasonable person could find them unworthy of credence and hence infer that the defendant did not act for the asserted non-discriminatory reasons. *See Boumedhi v. Plastag Holdings, LLC*, 489 F.3d 781, 792

(7th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "Summary judgment for the defendant is appropriate if the plaintiff fails to carry his burden to establish a prima facie case or is unable to show a genuine dispute about whether the neutral reason advanced by the employer was merely pretextual." *Smith*, 806 F.3d at 905.

First, the Court concludes that the Plaintiff has met his initial burden of establishing a prima facie case of discrimination. It is undisputed that the Plaintiff, who is African American, is a member of a protected class, that he was rejected for the November 2011 SRO vacancy, and that an individual outside his protected class—Officer Antonio Pacheco, who is Latino—was selected for the SRO vacancy. Furthermore, when the facts are viewed in the light most favorable to the nonmoving party, the Plaintiff was qualified for the position based upon his volunteer work and prior experience as an SRO Officer with the City of Benton Harbor. Additionally, when viewing the evidence in the light most favorable to the nonmoving party, the Court cannot conclude that Officer Pacheco, who was appointed to the SRO vacancy, was "better qualified" than the Plaintiff due to the fact that Officer Pacheco did not have prior experience as an SRO Officer.

Second, the Defendant has offered a legitimate, nondiscriminatory reason for its employment decision. Critically, the Plaintiff was reprimanded for punching a handcuffed suspect in the face prior to his SRO application being rejected. Lieutenant Crittendon stated that, at the time of the decision, he was aware that the Plaintiff had punched a handcuffed suspect and that it was "critically important that SBPD not have heavy-handed officers in schools." Lieutenant Crittendon questioned "how it would look if I put an officer in schools who had a history of punching a suspect. If something happened, how could I—or the City—explain that? This information suggested to me that [the Plaintiff] was not the best applicant for the job."

7

Lieutenant Crittendon also highlighted that Officer Pacheco had experience as a special education teacher and spoke Spanish, the latter being an asset for the school's Latino population.

Third, the Court finds that the Plaintiff has not met his burden of presenting evidence that the Defendant's nondiscriminatory reason was a mere pretext. The Plaintiff does not dispute that he punched a handcuffed suspect in the face in 2010. In fact, the Plaintiff pleaded guilty in 2016 to a criminal charge arising from that event. Lieutenant Crittendon, who supervised the SRO program and who was African American, stated that he "was generally aware that [the Plaintiff] had served a suspension the year before (*i.e.*, 2010) for punching a handcuffed suspect at the county jail" and that the Plaintiff "was not the best applicant for the job" because it was "critically important that SBPD not have heavy-handed officers in schools." Thus, the Plaintiff is unable to show a genuine dispute about whether the neutral reason advanced by the Defendant was merely pretextual.

The Court notes that the Plaintiff—within his written declaration[1]—states that he filed a "written complaint against Division Chief Richmond for racial harassment" because "Richmond had submitted a letter to my chain of command falsely accusing me of ignoring a child abuse complaint . . . ." Decl. of Theodore Robert, ¶¶ 23–24. The Plaintiff also states that "[i]t is a fact that Richmond and Young who were caught making racially derogatory remarks about African Americans were part of the panel that made the SRO promotional recommendation to Chief Boykins." *Id.* ¶ 61. However, assuming that these allegations are true, the Plaintiff does not argue that these allegations create a material issue of fact regarding pretext. *See* Pl.'s Resp. Br. in Opp'n to Def.'s Am. Br. for Summ. J., ¶ 84, ECF No. 104. Likewise, the Plaintiff does not argue

---

[1] The Court has reviewed the Declaration under the applicable legal standards and considered only the relevant portions that comply with the requirements for a declaration. Furthermore, for the reasons stated below, the Plaintiff's declaration does not prevent the entry of summary judgment. Accordingly, the Defendant's request to strike the Declaration is denied as moot.

in his brief that these allegations demonstrate that the Defendant's nondiscriminatory reason was a mere pretext. *See id.* pp. 1–4. As such, any argument on this potential issue is waived. *Nichols*, 755 F.3d at 600 ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *see T.G. ex rel. T.G. v. Midland Sch. Dist. 7*, 848 F. Supp. 2d 902, 912 n. 4 (C.D. Ill. 2012) ("'Judges are not like pigs, hunting for truffles buried in briefs,' and are not required to search the records for additional arguments that might benefit a party." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

Furthermore, assuming that the officers made racially derogatory remarks, the Plaintiff does not offer any evidence, or even allege, that these statements were made in connection with his SRO application. *See Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652 (7th Cir. 2000) (finding that discriminatory statements made (1) around the time of and (2) in reference to the adverse employment action may provide evidence that the decision had an impermissible discriminatory motivation). The Plaintiff also fails to argue how Captain Young and Division Chief Richmond's alleged statements about African Americans could have affected Lieutenant Critterdon's justification for not promoting the Plaintiff to the SRO position. Lieutenant Critterdon, who is African American, was the supervisor of the SRO program and the lead person on the interview panel. Lieutenant Critterdon, as discussed more extensively above, was concerned about the Plaintiff's prior act of punching a handcuffed suspect in the face and was impressed that Officer Pacheco spoke Spanish and had prior experience as a special education teacher. The Plaintiff, as discussed above, fails to establish how Lieutenant Critterdon's reasons for promoting Officer Pacheco was a "lie, specifically a phony reason for some action." *Smith*, 806 F.3d at 905. Based upon this, the Plaintiff is unable to show the neutral reason advanced by

9

the employer—namely, his past action of punching a handcuffed suspect in the face—was a pretext for racial discrimination.

Thus, the Plaintiff is unable to show a genuine dispute about whether the reason for denying him the promotion to the SRO position was a pretext for race discrimination. Because the Court is granting summary judgment on the basis that the Plaintiff cannot establish a claim of race discrimination, it need not address the Defendant's alternative arguments.

## CONCLUSION

For the reasons stated above, the Defendant's Motion for Summary Judgment [ECF No. 93] is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendant City of South Bend, Indiana, and against Plaintiff Theodore Robert.

SO ORDERED on October 24, 2019.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT